Huffman *v.* Hughlett & Pyatt.

## M. J. HUFFMAN *v.* HUGHLETT & PYATT.

1. PLEADINGS AND PRACTICE. *Bill of exceptions.* If the circuit judge, in a case tried by him without a jury, find the facts established by the evidence, and embody them in a bill of exceptions without objection by the parties, the objection cannot be taken that the bill of exceptions does not contain all the evidence.

2. SAME. *Tort feasors. Waiver.* The commencement of an action by the injured party against one of a series of tort feasors, upon the implied promise arising from the conversion of personalty, will not be a waiver of his rights against the other tort feasors.

3. SAME. *Conversion.* If the circuit judge, who tries a case without a jury, finds that one of two defendants converted the personalty in controversy, and sold it to the other defendant without authority of the plaintiff, the owners, the findings of fact will warrant the conclusion by him that the latter defendant had also converted the property.

FROM SCOTT.

Appeal in error from the Circuit Court of Scott county.   D. K. YOUNG, J.

HENDERSON & JOUROLMON for Huffman.

W. P. WASHBURNE and L. A. GRATZ for Hughlett & Pyatt.

COOPER, J., delivered the opinion of the court.

On March 12, 1881, Hughlett & Pyatt sued out an original attachment against the estate of H. P. Springer, a non-resident of the State, the affidavit for the writ stating that Springer was indebted to them in the sum of seventy dollars "due by account for black walnut lumber that the said H. P. Springer wrongfully took from them, and converted to his own use." The attachment was issued and levied, and publication made requiring the said Springer to appear on April 21, 1881, before the justice who issued the writ, for a hearing. On April 21, 1881, Hughlett & Pyatt, upon an affidavit that Springer was either the partner or agent of M. J. Huffman, sued out a summons against H. P. Springer and M. J. Huffman to answer them in an action of debt in a sum under $100. This summons was issued by the same justice of the peace, executed upon Huffman, and made returnable before the justice on the same day. The plaintiffs appealed from the judgment rendered by the justice. In the circuit court, the case was tried by the judge without a jury, who rendered a judgment in favor of the plaintiffs against both of the defendants for the value of the lumber sued for. Huffman alone appealed.

The bill of exceptions shows that after the papers in the case were read, the plaintiffs and the defendant Huffman introduced oral proof showing the following facts, viz: "Plaintiffs were, as partners, the owners of

three walnut logs in New river containing 2,000 feet, and worth seventy dollars. These logs floated down the river to Russell's mill, and were then taken and converted by the defendant Springer, and sawed into lumber, and afterwards sold by him to the defendant without authority from plaintiffs, and the facts were so found by the court. The court adjudges that these facts constituted a trover and conversion of said property by each of said defendants, and that both of them were liable to plaintiffs for the value thereof by reason of said facts; and that plaintiffs, having waived the tort, and sued defendants for the value of said lumber were entitled to the same."

The Referees have reported in favor of an affirmance of the judgment below upon the ground that the bill of exceptions does not show that it contains all the evidence. The settled rule of this court undoubtedly is that where there is a general verdict by a jury and judgment thereon, on a similar finding by the court, without a jury, and judgment, if the bill of exceptions fails to show that it contains all the evidence, the court will presume that there was sufficient evidence to sustain the verdict. But this rule would, of course, not apply where there was a special verdict of the facts found by the jury, to which the court is asked to apply the law. The reason is that the evidence has accomplished its object when the facts intended to be established is found by the tribunal to whom that duty is entrusted by law. The same reason is equally applicable to a finding of the facts by the court, when the court is entrusted by law with that

duty. And the parties might themselves agree upon the facts proved in lieu of the evidence at large. If the testimony is of such a character as, under the rule of this court, to make the finding of a general verdict by court or jury conclusive, it is always sufficient to say that testimony was introduced by the plaintiffs tending to prove certain facts, and testimony by the defendant tending to prove certain facts. The Supreme Court of the United States, which does not revise the discretion of the lower court in refusing a new trial, has repeatedly condemned the plan of setting out the evidence at large, and insisted upon the adoption of the plan last mentioned, if a shorter statement of facts is not made or agreed upon. It is very much to be desired that the lawyers over the State would resort to the shorter mode suggested, and especially to the mode adopted in this case.

The suit was commenced by foreign attachment against Springer alone for the value of the lumber in controversy, based upon the implied assumpsit arising from the wrongful conversion of the property by the defendant. The suit was converted into a joint action against Springer and Huffman by a summons based upon the same implied promise. The affidavit upon which the plaintiff was permitted to make Huffman a party assumes the ground that Springer was his agent or partner. This affidavit, although in the record, is no part of it, not being incorporated in any bill of exceptions. The trial judge finds that in an action against the defendants, based on the facts of the case, as all of our civil actions are now under the Code,

for the value of property wrongfully converted, Springer took and converted the logs of plaintiffs, sawed them into lumber, and sold the lumber to Huffman without authority of the plaintiffs, and that both defendants are liable to the plaintiffs for the value of the property. It is now insisted for the defendant Huffman, that the suing out of the original attachment against Springer was a waiver of the tort in the original taking, the result of which was to turn Springer into a purchaser of the chattels, and to validate the sale by him to Huffman.

The argument in support of the position thus taken is rested partly on the decisions of this court which give to the action on the implied promise arising from a conversion of personalty all the incidents of any other action *ex contractu,* and partly on the holdings of the court, as to the effect of the waiver of a tort on the rights of action of the injured party. But the fact that a suit in a particular form of action must have all the incidents attached by law to that form of action, can have no necessary bearing on the effect of the form of action on the rights or remedies of the plaintiffs. And the holdings of the court on the effect of the waiver of a tort, which have been cited, only go to this extent that if the aggrieved party after a technical conversion resume possession of the property as owner, or otherwise assents to the tortious taking, the remedy in trover is gone: *Trayner* v. *Johnson,* 1 Head, 51; *Bell* v. *Cummings,* 3 Sneed, 275; 2 Greenl. Ev., sec. 642, note 3. He may still sue in case for the tort which he might have treated

as a conversion, or in assumpsit upon the implied promise: *Scruggs* v. *Davis*, 5 Sneed, 262; *Railroad* v. *Henderson*, 1 Lea, 1. If the action be in contract, it is not strictly a waiver of the tort, for the tort is the very foundation of the action, but, as Nicholson, C. J., has more accurately expressed it, a waiver of the "damages for the conversion," and a suing for the value of the property: *Kirkman* v. *Philips*, 7 Heis., 222, 224. It is simply an election between remedies for an act done, leaving the rights of the injured party against the wrong-doers unimpaired until he has obtained legal satisfaction. If it were otherwise, the suing of any one of a series of tort feasors, even the last, on the implied promise, where there was clearly no contract, would give him a good title and release all the others. No authority has been produced sustaining such a conclusion, and we are not inclined to make one.

The trial judge finds that Springer was guilty of a conversion of the property. Of course, he could communicate no title to a third person, even if he were a *bona fide* purchaser for value and without notice. Even in such a case the right to recover the property, if in existence, or its value if disposed of by the purchaser would be clear: *Price* v. *Jones*, 3 Head, 85. Whether a demand and refusal are necessary to establish a conversion in such cases is left in some obscurity by the authorities. They are only evidence of a conversion, and are unnecessary where there is other evidence of the conversion: *Houston* v. *Dyche*, Meigs, 76. The tendency of our decisions is to limit the

requirement to cases where the possession was rightfully acquired, and dispense with it where the act of taking possession was itself a conversion: *Merchants National Bank* v. *Trenholm*, 12 Heis., 520. The trial judge in this case does not find that Huffman was a *bona fide* purchaser without notice. He finds that the property was sold to him by the first wrong-doer without authority from the plaintiffs. The dominion or control thus acquired would necessarily be in his own right, and adverse to the right of the true owner. And the facts would warrant the conclusion reached by the trial court. The findings are not in the nature of a special verdict to which the court is to apply the law, but facts from which the judge, acting as a jury, might draw the necessary conclusions for a general verdict.

Affirm the judgment.